UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HEPZIBAH ALLEN,

                Plaintiff,

- against -

CITY OF NEW YORK, ET AL.,

                Defendants.

---

18-cv-9663 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The pro se plaintiff, Hepzibah Allen, brings this action against the defendants, the City of New York, the New York City Department of Education ("DOE"), and Richard Forman, alleging federal, state, and local claims arising from alleged discrimination by the defendants based on race and color and alleged retaliation. The defendants move to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) because of procedural deficiencies as well as failure to allege facts that rise to the level of unlawful discrimination or retaliation. The motion to dismiss is **granted** as to all claims, **without prejudice** to the filing of another amended complaint.

I.

Rule 12(b)(1) of the Federal Rules of Civil Procedure is the mechanism for moving to dismiss a complaint for lack of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when

1

the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). In considering a Rule 12(b)(1) motion, courts must construe all ambiguities and inferences in a plaintiff's favor. However, a court may refer to evidence outside of the pleadings, and the burden is on the plaintiff to prove by a preponderance of the evidence that jurisdiction exists. See Makarova, 201 F.3d at 113.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

The pleadings and allegations of a pro se plaintiff must be construed liberally for the purposes of Rule 12(b)(6). See McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145-46 (2d Cir. 2002). Additionally, the submissions of a pro se litigant should be interpreted to "raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Brooks v. City of New York, No. 17-cv-03115, 2018 WL 3130602, at *1 (S.D.N.Y. June 26, 2018). But the

3

Court cannot invent factual allegations that the plaintiff has not pleaded. See Ambrose v. Dell, No. 12-cv-6721, 2016 WL 894456, at *3 (S.D.N.Y. Mar. 8, 2016).

## II.

The following allegations, set forth in the Amended Complaint, are accepted as true for the purposes of this motion.

Hepzibah Allen is African-American. Am. Compl. ¶ 7. She has been employed by the DOE as a social worker since January, 2005 and has worked in that capacity at Clara Barton High School ("CBHS") in Brooklyn, New York since September, 2014. Id. ¶¶ 7-8. She works under the defendant, Richard Forman, who is the principal at CBHS. Id. ¶ 8.

Sometime prior to January 12, 2017 a teacher, Viktoriya Mushailova, informed Forman that the plaintiff had failed to provide counseling services required by a student's Individualized Educational Program and that the plaintiff had entered inaccurate student attendance information into the Special Education Student Information System ("SESIS"). Id. ¶ 19. On January 12, 2017, the Office of Special Investigations ("OSI") received a referral from the Special Commissioner of Investigation ("SCI") concerning the plaintiff's conduct after Forman told the SCI what he had heard from Musahilova. Id. ¶ 18. On January 31, 2017 the plaintiff was requested to attend a meeting with Forman, a union representative, the assistant

4

principal, and an investigator from the OSI, and was given 48-hour notice that an investigation into her alleged employee misconduct had been filed. Id. ¶ 20.

Sometime in March, 2017, the plaintiff filed a charge with the EEOC alleging race discrimination by Forman and the DOE. Id. ¶ 24. In her EEOC charge, the plaintiff alleged that white employees at CBHS often were not disciplined, whereas black employees were disciplined, that the accusations in January, 2017 about her failure to provide services were illegitimate and unfairly singled her out on account of her race, and that black social workers at CBHS, unlike white social workers, did not receive supervision. Id. ¶¶ 25-27. In particular, the plaintiff alleged that white employees at CBHS frequently committed infractions, but were not disciplined by Forman as the plaintiff had been. Id. ¶¶ 30-33. In June, 2017, the plaintiff received her first right-to-sue letter from the EEOC. Id. ¶ 36.

On September 7, 2017, the plaintiff met with Forman at which point he presented her with the OSI's report, dated July 24, 2017. Id. ¶ 38. The report had found that the plaintiff had made a fraudulent entry in the SESIS in connection with counseling services she had allegedly failed to provide on January 9, 2017. Id. ¶ 40. The plaintiff alleges that the timing of the OSI report suggests that Forman brought the charge in retaliation for plaintiff's protected activity of bringing a

5

charge before the EEOC. Id. ¶ 39. At the September 7, 2017 meeting, Forman stated that he agreed with the OSI report, which meant that a Section 3020-a proceeding would begin that could lead to the termination of the plaintiff's employment. Id. ¶ 42. In the Section 3020-a proceeding, Forman added to the facts spelled out in the OSI report, alleging that the plaintiff had engaged in conduct that could constitute crime, fraud, or neglect of duties from 2015 to 2017 by failing repeatedly to provide mandated services to students. Id. ¶ 43. The plaintiff alleges that Forman's decision to allow the 3020-a proceeding to continue and his decision to add specifications were in retaliation for the plaintiff's EEOC filing and that his actions in that regard demonstrated racial bias. Id. ¶¶ 41, 44.

On November 24, 2017, the plaintiff filed a protected charge with the New York State Division of Human Rights ("SDHR") alleging race discrimination and work retaliation against Forman and the DOE. Id. ¶ 45. On December 1, 2017, the plaintiff signed a Post-Charge Stipulation of Settlement in which, among other things, the DOE agreed to stop proceedings under Section 3020-a, the plaintiff admitted to entering inaccurate student attendance information into the SESIS, the plaintiff agreed to pay a $3,000 fine, and the parties to the stipulation agreed to waive their rights to initiate or continue legal or administrative

6

proceedings arising out of the matter, except to enforce the stipulation. Id. ¶¶ 48-49; Dkt. No. 18-5.

After the stipulation, the plaintiff kept in place the portion of the November 24, 2017 SDHR filing pertaining to Forman's alleged discriminatory practices of not reporting and disciplining white employees in the same way he had disciplined the plaintiff. Am. Compl. ¶¶ 49-52. In that filing, she also alleged that on September 26, 2017 Forman met with the plaintiff and told her "that if you people would not complain so much you would not find yourselves in so much trouble." Dkt. No. 18-3. The plaintiff interpreted Forman's comment at that meeting as "referring to my ethnic/racial background." Id.

The plaintiff further alleges that, following the stipulation on December 1, 2017, Forman retaliated against her because she had filed an SDHR complaint by assigning her to less favorable positions within the school. Am. Compl. ¶¶ 53-56. The plaintiff further alleges that beginning on February 12, 2018, Forman began a pattern of discriminatory behavior directed at the plaintiff, which consisted of verbal warnings for missing professional development, an interrogation as to her absence while absent white colleagues were not so warned, and depriving the plaintiff of a classroom or otherwise forcing her to share a classroom when a white employee occupied a large office space even as a part-time retiree. Id. ¶¶ 58-62.

On May 24, 2018, the SDHR dismissed the plaintiff's case after finding a lack of evidence in support of allegations of retaliation and discrimination on the basis of race and color. Id. ¶ 63; Dkt. No. 18-6. Then, in September 2018, the EEOC sent the plaintiff her second right-to-sue letter, informing the plaintiff that the EEOC had adopted the findings of the SDHR. Am. Compl., Ex. A.[1]

On October 19, 2018, the plaintiff filed this lawsuit against Forman, the DOE, and the City of New York alleging claims of race and color discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; intentional employment discrimination on the basis of race under 42 U.S.C. § 1981; employment discrimination under the New York State Human Rights Law, New York Executive Law §§ 290-297; and employment discrimination under the New York City Human Rights Law, New York City Administrative Code §§ 8-101 to 131. The plaintiff alleges violations based on theories of discrimination, retaliation, and a hostile work environment. The plaintiff seeks reimbursement of the $3,000 fine, emotional damages, and monetary damages related to lost income from her private psychotherapy practice, which she allegedly ended because of pain and suffering. Am. Compl. ¶¶ 65-67.

---

[1] The amended complaint recites the date of the second right-to-sue letter as "September 2019." This is clearly a typographic error. The date of the second right-to-sue letter was in September, 2018.

## III.

### A.

The City of New York seeks to dismiss all claims against it because the Amended Complaint does not allege any claims against the City of New York. It is well-established that the DOE is separate and distinct from the City of New York, and not a division or department of the City. See Falchenberg v. New York City Dept. of Educ., 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005); N.Y. Educ. Law § 2551. The Amended Complaint alleges facts only against Forman and the DOE and does not allege facts that give rise to a plausible claim against the City of New York independently.

Therefore, the City of New York is **dismissed** from this case pursuant to Rule 12(b)(6).

### B.

Next, all claims arising from facts that occurred prior to the stipulation of December 1, 2017, and that are covered by the stipulation of December 1, 2017, are barred by the terms of that stipulation. "Under Title VII, an employee may validly waive a claim of discrimination so long as the waiver is made knowingly and willfully." See Bormann v. AT&T Comms., Inc., 875 F.2d 399, 402 (2d Cir. 1989) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 & n.15 (1974) (quotation marks omitted)); see also

Livingston v. Adirondack Beverage Co., 141 F.3d 434, 438 (2d Cir. 1998) (setting out the "totality of the circumstances test" to be used to assess the validity of Title VII waivers). Waivers of Section 1981, NYSHRL, and the NYCHRL are analyzed identically to Title VII waivers. See Rozenfeld v. Dept. of Design & Constr. of City of New York, 875 F. Supp. 2d 189, 199-201 (E.D.N.Y. 2012) (NYSHRL and NYCHRL); Bachiller v. Turn On Prods., Inc., No. 00-CV-8701, 2003 WL 1878416, at *3-*4 (S.D.N.Y. Apr. 14, 2003).

As part of the Stipulation of Settlement entered into on December 1, 2017 between the plaintiff and the DOE, the parties "knowingly waive[d] their rights to make any legal or equitable claims or to initiate or continue legal or administrative proceedings of any kind against each other or any employee thereof relating to or arising out of this matter except to enforce this Stipulation. [Allen] further agree[d] to withdraw any such claims or actions that may have been commenced in any forum whatsoever arising out of the facts and circumstances of this case, including any grievances filed pursuant to the collective bargaining agreement." Dkt. No. 18-5. This is a clear waiver and there is no allegation that the stipulation was not signed by the plaintiff knowingly and willfully or that any of the allegations in this case that occurred prior to the stipulation were not covered by the stipulation.

By its terms, the stipulation covered any claims that the plaintiff wished to maintain against the defendants related to the commencement of the Section 3020-a action against the plaintiff. Such claims include allegations that the defendants discriminated against the plaintiff by bringing the Section 3020-a action against the plaintiff, a black woman, and not bringing similar allegations against similarly situated white employees, as well as the claim that the defendants retaliated against the plaintiff by bringing the Section 3020-a action in response to the plaintiff engaging in protected activity.

The motion to dismiss claims under Title VII, Section 1981, the NYSHRL, and the NYCHRL is therefore **granted** pursuant to Rule 12(b)(6) to the extent those claims arise from events occurring before December 1, 2017 and concern allegations that the defendants subjected the plaintiff to discriminatory and retaliatory discipline in the form of the Section 3020-a action.

### C.

In any event, the plaintiff's Title VII claims for pre-December 1, 2017 conduct by the defendants lack merit.

Before turning to the merits, two threshold matters must be discussed. First, the plaintiff cannot sue Forman under Title VII because individuals are not proper defendants under Title VII. See Sassaman v. Gamache, 566 F.3d 307, 315-16 (2d Cir.

11

2009). Second, the Title VII time bar likely prevents the plaintiff's pre-December 1, 2017 claims. Title VII requires that a plaintiff file a complaint in a United States District Court within ninety days of receiving a right-to-sue letter from the EEOC. See Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996); 42 U.S.C. § 2000e-5(f)(1). When a plaintiff receives multiple right-to-sue letters from the EEOC, the plaintiff has ninety days from the issuance of the first right-to-sue letter to commence the action in federal court if the letters are based upon the same underlying facts. See Melie v. EVC/TCI College Admin., 374 F. Appx. 150, 152 (2d Cir. 2010) (citing Soso Liang Lo v. Pan Am. World Airways, Inc., 787 F.2d 827, 828 (2d Cir. 1986)). The plaintiff received her first right-to-sue letter in June, 2017. The June, 2017 letter arose out of the plaintiff's allegations that Forman discriminated against her when he reported to the OSI the plaintiff's failure to provide services while frequently failing to discipline white employees. The plaintiff received her second right-to-sue letter in September 2018. The plaintiff's September 2018 right-to-sue letter was issued after the EEOC adopted the SDHR's May 30, 2018 finding of no probable cause for a claim of discrimination. In her complaint to the SDHR on November 24, 2017, the plaintiff restated her allegations of racial discrimination that arose out of Forman's actions in January 2017, namely that his actions

12

were part of a larger pattern of disciplining black employees and refraining from disciplining white employees. The plaintiff filed this lawsuit on October 19, 2018, after the ninety-day window which ran from the first right-to-sue letter in June, 2017, but within the ninety-day window which ran from the second right-to-sue letter in September, 2018. Thus, the plaintiff's pre-December 1, 2017 Title VII claims, which largely concern the defendants' alleged discriminatory discipline practices, were not filed timely in this case because they were not filed within 90 days of the June, 2017 right-to-sue letter.

In any event, the pre-December 1, 2017 claim for discrimination is without merit. To survive a motion to dismiss a Title VII claim for discrimination, the plaintiff must show "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a <u>minimal</u> burden of showing facts suggesting an inference of discriminatory motivation." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 311 (2d Cir. 2015). The plaintiff satisfies the first two prongs of the <u>Littlejohn</u> test, but she does not plausibly allege that she suffered an adverse employment action within the meaning of Title VII as a result of the pre-December 1, 2017 conduct. The only possibly adverse employment action that the plaintiff alleges is the result of the Section 3020-a proceeding, but she

waived the right to sue for that proceeding or its resolution. The plaintiff did not suffer any consequences in her employment prior to December 1, 2017 besides being subjected to the Section 3020-a proceeding. That is not an adverse employment action.

Nor has the plaintiff stated a claim for retaliation. To make out a retaliation claim the plaintiff must show that "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity known to the defendant." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007). The Section 3020-a disciplinary charges brought against her cannot form the basis of a retaliation claim because the OSI investigation that led to the 3020-a proceedings began in January, 2017, whereas the plaintiff's first protected activity was her filing of the EEOC complaint, which occurred in March, 2017. In any event, the plaintiff waived any claims arising out of the disciplinary proceeding.

Further, the single conversation between Forman and the plaintiff on September 26, 2017 does not constitute a Title VII violation. The conversation does not constitute an act of discrimination because it was neither accompanied by, nor resulted in, an adverse employment action. Nor does the single conversation rise to the level of a hostile work environment. To state a claim for a hostile work environment, a plaintiff must

14

show that the conduct "(1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." Patane, 508 F.3d at 113 (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001) (quotation marks and alterations omitted)). Without more, a single, isolated incident – unless it is unusually severe – does not rise to the level of a hostile work environment. See Jackson v. NYS Dept. of Labor, No. 09cv6608, 2012 WL 843631, at *4 (S.D.N.Y. Mar. 12, 2012) ("[A]n isolated incident – a mere offensive utterance – does not permit a reasonable inference that [the plaintiff] was faced with harassment of such quality that a reasonable employee would find the conditions of her employment altered for the worse.") (quotations omitted). Thus, the plaintiff's pre-December 1, 2017 Title VII claims are without merit.

**D.**

To the extent that the plaintiff's Title VII claims are based on facts that arose after December 1, 2017, and are therefore not covered by the stipulation, the plaintiff has failed to state a claim.

As an initial matter, the post-December 1, 2017 Title VII claims are not barred by the Title VII time bar. To the extent

15

that the plaintiff's Title VII claims are based on allegations that Forman retaliated against the plaintiff after December 1, 2017 or created a hostile work environment after that date, those claims are properly presented to this Court because this case began within ninety days of the September, 2018 letter and the post-December 1, 2017 claims did not form the factual basis for the issuance of the June, 2017 right-to-sue letter.

However, the alleged post-December 1, 2017 conduct does not plausibly amount to a claim under Title VII. The post-December 1, 2017 conduct consists of the following allegations: that Forman directed at the plaintiff verbal warnings for missing professional development; that he interrogated her about her absence while absent white colleagues were not so warned; and that he deprived her of a classroom or otherwise required her to share a classroom while a white employee occupied a large office space even as a part-time retiree. But the plaintiff does not point to any negative consequences that befell her that rise to the level of an adverse employment action under <u>Littlejohn</u>. Indeed, Forman reinstated the plaintiff to her former position after the December 1, 2017 stipulation, and at no point after December 1, 2017 does the plaintiff allege that she was demoted or suffered any similar adverse change in position. Further, the allegation that Forman required her to share a classroom does not rise to the level of an adverse employment action. <u>See</u>

Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) ("Plaintiff was not transferred, nor were his job duties changed. He merely felt that he was not working to his fullest capacity."); see also Staff v. Pall Corp., 233 F. Supp. 2d 516, 532 (S.D.N.Y. 2002), aff'd 76 F. App'x 366 (2d Cir. 2003) ("Under these circumstances, Defendants' failure to provide Plaintiff with a private office or subordinates does not, as a matter of law, constitute an adverse employment action."). Moreover, mere verbal reprimands without any accompanying negative consequences also do not constitute an adverse employment action. See Bennett, 136 F. Supp. 2d at 248.

Nor can there be a retaliation claim for events occurring after December 1, 2017 because the DOE, acting through its employee Forman, took no employment action against the plaintiff that disadvantaged her in any way after that date.

The plaintiff has also failed to state a claim under her third theory of recovery, that Forman and the DOE subjected her to a hostile work environment in violation of Title VII. The facts alleged in the complaint that occurred after December 1, 2017 are not "objectively severe or pervasive."

Therefore, the motion to dismiss the plaintiff's Title VII claims is **granted** pursuant to Rule 12(b)(6).

**E.**

The plaintiff's Section 1981 claim against Forman and DOE must also be dismissed. "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004). Similarly, "most of the standards applicable to the conduct alleged to constitute hostile work environment in violation of Title VII are also applicable to . . . employment claims under § 1981." Id. Title VII and Section 1981 differ in that (1) claims under Section 1981 are not subject to administrative exhaustion requirements; (2) a plaintiff suing a municipal defendant under Section 1981 must show that the challenged acts were performed pursuant to a municipal policy or custom as articulated in Jett v. Dallas Independent School District, 491 U.S. 701 (1989); (3) an individual is a proper defendant under Section 1981; and (4) while a Title VII claim can be established through mere negligence, a plaintiff must show that a Section 1981 defendant engaged in intentional discrimination. See id. at 225-27.

None of these distinctions is of significance in this case, and therefore, for the same reasons that the Title VII claims lack merit and must be dismissed, the motion to dismiss all Section 1981 claims is **granted.**

## F.

Finally, the claims under the NYSHRL and NYCHRL are barred as procedurally defective. The election of remedies principle provides that a court cannot hear a case alleging a violation of the NYSHRL or the NYCHRL when the plaintiff has already filed a complaint with the State Division of Human Rights. See York v. Assn. of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002) (New York Executive Law § 279(9) and New York City Administrative Code § 8-502(a) bar NYSHRL and NYCHRL claims once they are brought before the SDHR). In this case, the plaintiff filed a complaint with the SDHR alleging violations under the NYSHRL and NYCHRL, and therefore is now barred from bringing claims in federal court under the NYSHRL or NYCHRL.

Education Law § 3813(1) independently bars the plaintiff's NYSHRL and NYCHRL claims. A plaintiff who sues the DOE or its employees, under either the NYSHRL or the NYCHRL, must file a notice of claim within ninety days after the claim arises, and then allege compliance with the notice-of-claim provision of the Education Law in the complaint. See Hartley v. Rubio, 785 F. Supp. 2d 165, 184-85 (S.D.N.Y. 2011); N.Y. Educ. Law § 3813(1). The plaintiff has sued DOE and its employee, Forman, but has not complied with the notice of claim requirements of Section 3813(1).

The plaintiff's NYSHRL and NYCHRL claims are procedurally barred, and the motion to dismiss those claims is **granted** pursuant to Rule 12(b)(1).

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent they are not specifically addressed, they are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss the Amended Complaint is **granted**. Because it is unclear whether the pro se plaintiff can cure the defects in the complaint, the motion is **granted without prejudice** to the plaintiff's filing another amended complaint. Any amended complaint must be filed within thirty days of the date of this opinion.

**SO ORDERED.**

**Dated:** **New York, New York**
**October 23, 2019**

John G. Koeltl
United States District Judge